# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Sohail Abdulla, Appellant,

v.

Southern Bank, Respondent.

Appellate Case No. 2019-001142

———————

Appeal From Aiken County
Maite Murphy, Circuit Court Judge

———————

Opinion No. 5976
Submitted October 3, 2023 – Filed April 12, 2023

———————

**AFFIRMED**

———————

Tucker S. Player, of Player Law Firm, LLC, of Chapin,
for Appellant.

Mark Louis Wilhelmi, of Mark L. Wilhelmi P.C., of
Augusta, Georgia, for Respondent.

———————

**LOCKEMY, A.J.:** Sohail Abdulla appeals an order from the circuit court
dismissing his case against Southern Bank for lack of personal jurisdiction. On
appeal, Abdulla argues (1) the circuit court's order contained numerous errors of
fact that were unsupported by the record, (2) the circuit court erred by finding
Southern Bank's delay in filing its motion to dismiss was reasonable under
*Maybank v. BB&T Corporation*,[1] and (3) two substantive errors of law controlled

———————

[1] 416 S.C. 541, 787 S.E.2d 498 (2016).

the circuit court's decision. For the reasons stated below, we affirm.

## FACTS/PROCEDURAL HISTORY

Prior to 2010, Abdulla resided in Augusta, Georgia, and at the commencement of this litigation, he resided in Aiken County, South Carolina. Southern Bank is a Georgia corporation with its main office in Burke County, Georgia.

In 1997, Abdulla placed jewelry, consisting of two gold and diamond rings, one gold ring, and a platinum bar pin, in the vault of Southern Bank's Waynesboro, Georgia branch. In 1998, Abdulla opened a business checking account with Southern Bank, and it provided financing for Abdulla's business, Sportsman's Link, Inc. (Sportsman's), a sporting goods store in Augusta, Georgia. Sportsman's was a Georgia corporation, and Abdulla was the president and CEO.

In 2007, Sportsman's filed for Chapter 11 bankruptcy in the United States Bankruptcy Court, Southern District of Georgia, Augusta Division, and the bankruptcy was converted to a Chapter 7 bankruptcy proceeding on July 22, 2008.

In the bankruptcy proceeding, Southern Bank filed a proof of claim, a form used by Southern Bank to indicate the amount of the debt owed by Abdulla on the date of the bankruptcy filing, which stated it had a secured proof of claim in the amount of $853,718; it subsequently filed an amended unsecured proof of claim for the amount of $265,962.86.[2]

In February 2017, Abdulla filed a complaint against Southern Bank. He alleged Southern Bank improperly converted jewelry he had provided to it, that served as collateral for loans he obtained. He asserted jurisdiction was proper under the state's long-arm statute.[3] The complaint further stated (1) Southern Bank provided two proofs of claim to the bankruptcy court and (2) Southern Bank had notified the bankruptcy court it held the jewelry in its vaults in each of those proofs of claim. Abdulla alleged because he no longer had outstanding debts with Southern Bank, it should return the jewelry to him. He asserted Southern Bank claimed he removed the jewelry in 2004, but he contended he never removed the jewelry.

---

[2] "[S]ecured or unsecured status in a bankruptcy refers to whether or not the creditor has an interest in property of the bankrupt estate." *Rock Hill Nat'l Bank v. Honeycutt*, 289 S.C. 98, 102, 344 S.E.2d 875, 877 (Ct. App. 1986)

[3] S.C. Code Ann. § 36-2-803(A)(3) (Supp. 2022).

In its answer, Southern Bank argued jurisdiction was improper under the long-arm statute because (1) all loan agreements between Sportsman's and Southern Bank were executed in Georgia; (2) Sportsman's was a Georgia corporation; and (3) Southern Bank did not transact business with Abdulla or Sportsman's outside of Georgia. Southern Bank stated it would file a separate motion to dismiss. Southern Bank also indicated Abdulla "removed all items from the bank vault on or about May 27, 2004, without permission or knowledge of the bank lending officer(s)."

On May 19, 2017, Abdulla's counsel contacted Southern Bank's counsel and inquired if it would be possible for Southern Bank to answer "some general discovery requests" regarding the jewelry. Abdulla's counsel stated providing discovery responses could "expedite the disposition" of the case and requested proof Abdulla took the jewelry in 2004.

Southern Bank responded to Abdulla's interrogatories and requests for production. It provided a description of the jewelry in an attached document. Southern Bank stated two former employees released the pieces of jewelry to Abdulla on March 9, 2004, and Southern Bank provided a copy of a vault ledger log. The vault ledger log stated "Abdulla, Sohail[,] jewelry 3 rings 1 brooch[,] 5/29/97[,] rel 3/9/04[,] SH KSC."

Southern Bank filed a motion to dismiss for lack of personal jurisdiction, arguing the circuit court lacked jurisdiction because (1) it had never transacted business in South Carolina with Abdulla or Sportsman's, (2) all contractual business between it and Abdulla and Sportsman's occurred in Georgia, (3) Abdulla was a resident of Georgia during the time he transacted business with it, and (4) it had no physical locations in South Carolina. Southern Bank further asserted the circuit court did not have personal jurisdiction over it because it did not have the requisite minimum contacts and did not purposefully avail itself of the privileges of conducting business in South Carolina.

Ralph Dickey, president of Southern Bank, provided an affidavit in support of the motion to dismiss. He stated Abdulla provided Georgia addresses for his personal accounts and Sportsman's business account. According to Dickey, as a result of the liquidation of Sportsman's, Southern Bank sustained a loss of $363,000. Dickey also attested Southern Bank did not have any physical locations in South Carolina and had not conducted business with Abdulla in South Carolina.

Abdulla filed a response to Southern Bank's motion to dismiss. He argued (1) Southern Bank asserted it had the jewelry in the proofs of claim filed with the

bankruptcy court; (2) the long-arm statute conferred jurisdiction because Southern Bank committed an out-of-state tortious act that resulted in an in-state injury; and (3) Southern Bank waived its defense by engaging in discovery and dilatorily filing its motion.

On February 20, 2018, the parties submitted a consent motion for entry of a scheduling order. The consent motion notified the circuit court that (1) Southern Bank's primary witness was unavailable for a deposition in February because of a surgery; (2) Southern Bank's motion to dismiss was scheduled for a hearing on April 2, 2018, and would need to be heard before trial; and (3) a scheduling order was necessary for the parties to complete discovery and proceed with Southern Bank's motion to dismiss.

At his March 2018 deposition, Abdulla stated he had resided in Aiken since 2010. Abdulla confirmed that prior to his departure to the Middle East in 2008, he had lived in Georgia and never previously lived in South Carolina. When asked if he and Southern Bank executed all the prior loan agreements in Georgia, Abdulla answered affirmatively. He also confirmed Sportsman's was located in Augusta, Georgia, before its dissolution. Abdulla stated that in 2010, he requested Southern Bank provide him with an accounting and all documents it had it in its possession related to his personal accounts, Sportsman's accounts, defaults, and bankruptcy sales. When asked if he recalled going to the bank and removing the jewelry, Abdulla stated the vault ledger log did not contain his signature and asked how could he remove items that were collateral.

Abdulla filed an affidavit stating he had been a resident of South Carolina since 2010. He asserted Southern Bank filed proofs of claim that stated it held the jewelry as collateral. According to Abdulla, in 2010 and in 2016, he requested all documents and an accounting of his activities with Southern Bank but was "largely ignored." He further attested that after his request in 2016, Southern Bank informed him the items were removed in 2004.

At the hearing on the motion to dismiss, the parties raised substantially similar arguments as they had in their motions and responses. The circuit court subsequently dismissed Abdulla's complaint for lack of personal jurisdiction. The circuit court determined Southern Bank did not have contact with Abdulla after he moved to South Carolina and they only conducted business with him while he was a Georgia resident. Further, it found Southern Bank did not waive its defense under *Maybank*. It held Southern Bank responded to Abdulla's discovery requests to expedite the case, depositions were conducted to determine the jurisdictional issue, and Southern Bank did not submit any discovery requests of its own. The

circuit court concluded Abdulla did not establish personal jurisdiction in his complaint or in his affidavit and he could not "satisfy the requirements of due process," which would subject Southern Bank to the jurisdiction of the court.

Abdulla filed a motion to reconsider, which the circuit court denied. This appeal follows.

## ISSUES ON APPEAL[4]

1. Did the circuit court's decision contain numerous errors of fact that were wholly unsupported by the record?

2. Did the circuit court err in finding Southern Bank's delay in filing its motion to dismiss was reasonable under *Maybank*?

3. Was the circuit court's decision controlled by two substantive errors of law and should it be reversed?

## STANDARDS OF REVIEW

"The question of whether a court may exercise personal jurisdiction over a nonresident defendant is one that must be resolved upon the facts of each particular case." *Hidria, USA, Inc. v. Delo*, 415 S.C. 533, 539, 783 S.E.2d 839, 842 (Ct. App. 2016). "The decision of the [circuit] court should be affirmed unless unsupported by the evidence or influenced by an error of law." *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 491, 611 S.E.2d 505, 508 (2005).

"It is well-settled that the party seeking to invoke personal jurisdiction over a non-resident defendant via our long-arm statute bears the burden of proving the existence of personal jurisdiction." *Moosally v. W.W. Norton & Co.*, 358 S.C. 320, 327, 594 S.E.2d 878, 882 (Ct. App. 2004). "At the pretrial stage, the burden of proving personal jurisdiction over a nonresident is met by a prima facie showing of jurisdiction either in the complaint or in affidavits." *Id.* at 328, 594 S.E.2d at 882. "When a motion to dismiss attacks the allegations of the complaint on the issue of jurisdiction, the court is not confined to the allegations of the complaint but may resort to affidavits or other evidence to determine jurisdiction." *Coggeshall v. Reprod. Endocrine Assocs. of Charlotte*, 376 S.C. 12, 16, 655 S.E.2d 476, 478 (2007).

---

[4] We address issues one and three together.

This court reviews a circuit court's determination regarding a waiver of a personal jurisdiction defense under an abuse of discretion standard. *Maybank*, 416 S.C. at 566, 787 S.E.2d at 511. "An abuse of discretion occurs when there is an error of law or a factual conclusion that is without evidentiary support." *Ellis v. Davidson*, 358 S.C. 509, 524, 595 S.E.2d 817, 825 (Ct. App. 2004).

## LAW/ANALYSIS

### I.    Exercise of Personal Jurisdiction

Abdulla argues the circuit court erred in determining it could not exercise personal jurisdiction over Southern Bank. We disagree.

South Carolina's long-arm statute provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's . . . commission of a tortious act in whole or in part in this State . . . ." § 36-2-803(A)(3).

"The Due Process Clause of the Fourteenth Amendment limits the power of a state court to exert personal jurisdiction over a nonresident defendant." *Moosally*, 358 S.C. at 330, 594 S.E.2d at 883. "Due process requires that there exist minimum contacts between the defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.*

"Traditionally, our courts have conducted a two-step analysis to determine whether specific jurisdiction is proper by 1) determining if the long[-]arm statute applies and 2) determining whether the nonresident's contacts in South Carolina are sufficient to satisfy due process requirements." *Cribb v. Spatholt*, 382 S.C. 475, 483, 676 S.E.2d 706, 710 (Ct. App. 2009). "However, a more recent trend compresses the analysis into a due process assessment only." *Id.*

"Courts have construed South Carolina's long-arm statute, which affords broad power to exercise personal jurisdiction over causes of action arising from tortious acts and injuries in South Carolina, to extend to the outer limits of the [D]ue [P]rocess [C]lause." *Hidria, USA, Inc.*, 415 S.C. at 540, 783 S.E.2d at 843. "Because we treat our long-arm statute as coextensive with the [D]ue [P]rocess [C]lause, the sole question becomes whether the exercise of personal jurisdiction in this case would violate the strictures of due process." *Moosally*, 358 S.C. at 329, 594 S.E.2d at 883.

"Due process requires a defendant possess minimum contacts with the forum state such that maintenance of suit does not offend traditional notions of fair play and

substantial justice." *Cribb*, 382 S.C. at 483, 676 S.E.2d at 711. "Courts apply a two-pronged analysis when determining whether a defendant possesses minimum contacts with the forum state such that maintenance of suit does not offend traditional notions of fair play and substantial justice." *Id.* at 484, 676 S.E.2d at 711. "The court must (1) find that the defendant has the requisite minimum contacts with the forum, without which, the court does not have the 'power' to adjudicate the action and (2) find the exercise of jurisdiction is reasonable or fair." *Power Prod. & Servs. Co., Inc. v. Kozma*, 379 S.C. 423, 432, 665 S.E.2d 660, 665 (Ct. App. 2008). "To satisfy the power prong, the court must find the defendant directed his activities to residents of South Carolina and that the cause of action arises out of or relates to those activities." *Cribb*, 382 S.C. at 499, 676 S.E.2d at 719. "The defendant must purposefully avail itself of the privileges of conducting activities in this State, thus invoking the benefits and protections of our laws." *S. Plastics Co. v. S. Com. Bank*, 310 S.C. 256, 261, 423 S.E.2d 128, 131 (1992). "The 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Moosally*, 358 S.C. at 332, 594 S.E.2d at 884. In evaluating the fairness prong, a court considers the following factors: "(1) the duration of the defendant's activity in this State; (2) the character and circumstances of its acts; (3) the inconvenience to the parties by conferring or refusing to confer jurisdiction over the nonresident; and (4) the State's interest in exercising jurisdiction." *Cribb*, 382 S.C. at 484, 676 S.E.2d at 711.

"The plaintiff bears the burden of satisfying both tests." *Hidria, USA, Inc.*, 415 S.C. at 541, 783 S.E.2d at 843. "If either prong fails, the exercise of personal jurisdiction over the defendant fails to comport with the requirements of due process." *S. Plastics Co.*, 310 S.C. at 260, 423 S.E.2d at 131.

Initially, Abdulla only raises arguments regarding whether the long-arm statute applies and does not address whether Southern Bank sustained minimum contacts in South Carolina so as to satisfy due process. However, because our courts treat the long-arm statute as coextensive with the Due Process Clause, we address whether Abdulla showed the exercise of personal jurisdiction over Southern Bank would not violate due process. *See Moosally*, 358 S.C. at 329, 594 S.E.2d at 883 ("Because we treat our long-arm statute as coextensive with the [D]ue [P]rocess [C]lause, the sole question becomes whether the exercise of personal jurisdiction in this case would violate the strictures of due process."); *Cribb*, 382 S.C. at 483, 676 S.E.2d at 711 ("Due process requires a defendant possess minimum contacts with the forum state such that maintenance of suit does not offend traditional notions of fair play and substantial justice."); *Hidria, USA, Inc.*, 415 S.C. at 541, 783 S.E.2d

at 843 ("The plaintiff bears the burden of satisfying both tests.").  We find he did not.

We hold the circuit court did not err in finding it could not exercise personal jurisdiction over Southern Bank under the long-arm statute and Abdulla failed to demonstrate how subjecting Southern Bank to the jurisdiction of the court would not offend due process.  We conclude the power prong of the due process consideration is not satisfied by the facts of this case.  *See Hidria, USA, Inc.*, 415 S.C. at 539, 783 S.E.2d at 842 ("The question of whether a court may exercise personal jurisdiction over a nonresident defendant is one that must be resolved upon the facts of each particular case.").  First, we find Southern Bank's contacts to South Carolina were nonexistent in this matter.  *See Power Prod. & Servs Co.*, 379 S.C. at 432, 665 S.E.2d at 665 (determining the court must first "find that the defendant has the requisite minimum contacts with the forum, without which, the court does not have the 'power' to adjudicate the action").  Southern Bank's relationship with Abdulla was limited to Georgia.  The transactions he conducted with Southern Bank all occurred in Georgia.  Southern Bank did not have any locations in South Carolina.  Southern Bank did not directly conduct business with Abdulla after he moved to South Carolina in 2010.  At all times during its existence, Sportsman's was a Georgia corporation with its physical location in Augusta, Georgia.

Second, we find Abdulla failed to show Southern Bank directed its activities or purposefully availed itself of the privileges of conducting business in South Carolina and thus invoked the benefits and protections of South Carolina's laws such that it could anticipate being "haled" into court here.  *See Cribb*, 382 S.C. at 484, 676 S.E.2d at 711 ("To satisfy the power prong, the court must find the defendant directed his activities to residents of South Carolina and that the cause of action arises out of or relates to those activities."); *S. Plastics Co.*, 310 S.C. at 261, 423 S.E.2d at 131 ("The defendant must purposefully avail itself of the privileges of conducting activities in this State, thus invoking the benefits and protections of our laws."); *Moosally*, 358 S.C. at 332, 594 S.E.2d at 884 ("The 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.").

We conclude Abdulla failed to show (1) Southern Bank established sufficient contacts with this forum such that it should have anticipated being sued here and (2) the exercise of personal jurisdiction over Southern Bank under the long-arm statute comported with the "traditional notions of fair play and substantial justice." *See Cribb*, 382 S.C. at 483, 676 S.E.2d at 711; *see also Hidria, USA, Inc.*, 415 S.C.

at 541, 783 S.E.2d at 843 ("The plaintiff bears the burden of satisfying both tests.").

Because Abdulla failed to establish Southern Bank possessed the requisite minimum contacts with South Carolina so as to not offend due process, we do not address the fairness prong of the due process consideration. *See Power Prod. & Servs. Co.*, 379 S.C at 432, 665 S.E.2d at 665 (determining that the court must "find the exercise of jurisdiction is reasonable or fair"); *Hidria, USA, Inc.*, 415 S.C. at 541, 783 S.E.2d at 843 ("The plaintiff bears the burden of satisfying *both* tests.") (emphasis added); *S. Plastics Co.*, 310 S.C. at 260, 423 S.E.2d at 131 ("If either prong fails, the exercise of personal jurisdiction over the defendant fails to comport with the requirements of due process."); *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (observing an appellate court need not address remaining issues when the determination of another point is dispositive). Accordingly, we affirm on this issue.

## II.    Waiver of Defense under *Maybank*

Abdulla argues Southern Bank waived its defense based on lack of personal jurisdiction because it engaged in discovery and delayed in seeking a dismissal. We disagree.

"[A] delay in challenging personal jurisdiction by motion to dismiss may result in waiver, even where the defense was asserted in a timely answer." *Maybank*, 416 S.C. at 565, 787 S.E.2d at 510 (quoting *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60 (2d Cir. 1999)).

In *Maybank*, our supreme court determined a trial court acted within its discretion when it found an appellant, a banking corporation, waived its personal jurisdiction defense. 416 S.C. at 566, 787 S.E.2d at 511. In its answer, the corporation reserved its objection to the exercise of personal jurisdiction and subsequently moved for removal to federal court, without allowing the trial court to rule on its defense reservation. *Id.* There, the parties engaged in litigation and discovery, prior to and after remand to the state court, for more than one year, and "[a]fter its active participation in the extensive discovery leading up to trial," the banking corporation reasserted its reservation "a mere one month prior to the start of trial." *Id.* On appeal, the banking corporation argued it was a North Carolina corporation with no operations, offices, or employees in South Carolina and had never provided services to the individual respondent or any individual customer in South Carolina. *Id.* at 564, 787 S.E.2d at 510. Our supreme court determined the defense was waived and the corporation "gambled that it could argue personal jurisdiction

on the eve of trial after actively participating in litigation over the course of two and a half years." *Id.* at 566, 787 S.E.2d at 511.

We find the circuit court did not err in determining Southern Bank did not waive its defense. *See Ellis*, 358 S.C. at 524, 595 S.E.2d at 825 ("An abuse of discretion occurs when there is an error of law or a factual conclusion that is without evidentiary support."). Here, unlike in *Maybank*, when that appellant waited more than one year after remand back to the state court to reassert the personal jurisdiction defense it simply "reserved" in its answer, Southern Bank stated in its answer the facts and allegations pertinent to its lack of personal jurisdiction defense and timely brought the issue before the circuit court by filing a motion to dismiss after raising the defense. Furthermore, we find Southern Bank did not waive its defense (1) by answering Abdulla's interrogatories and requests for production because it responded at Abdulla's counsel's behest, who requested the responsive discovery from Southern Bank to "expedite the disposition of the case" or (2) by participating in depositions to determine the issue of personal jurisdiction. *See Erickson v. Jones St. Publishers, LLC*, 368 S.C. 444, 476, 629 S.E.2d 653, 670 (2006) ("[A] party may not complain on appeal of error . . . which his own conduct has induced."). Additionally, the parties agreed to a consent motion for entry of a scheduling order, which stated Southern Bank's motion to dismiss would need to be heard before trial, and agreed the scheduling order was necessary for the parties to proceed with the motion. Accordingly, we affirm this issue.

**CONCLUSION**

Based on the foregoing, the circuit court's order dismissing Abdulla's claims for lack of personal jurisdiction is

**AFFIRMED.**[5]

**WILLIAMS, C.J., and THOMAS, J., concur.**

---

[5] We decide this case without oral argument pursuant to Rule 215, SCACR.