655 S.E.2d 476

Chandler COGGESHALL and Susan Coggeshall, individually, and as Guardians for their Minor Child Lawton Coggeshall, Of whom Chandler Coggeshall and Susan Coggeshall are, Appellants,

v.

REPRODUCTIVE ENDOCRINE ASSOCIATES OF CHARLOTTE, Jack L. Crain, M.D., and Edward E. Moore, M.D., d/b/a Carolina Center for Fertility and Endocrinology, Respondents.

No. 26410.

Supreme Court of South Carolina.

Heard Sept. 19, 2007.

Decided Dec. 20, 2007.

Thomas A. Pendarvis, of Pendarvis Law Offices, P.C., of Beaufort; and A. Camden Lewis and Ariail E. King, both of Lewis & Babcock, L.L.P., of Columbia, for appellants.

Samuel W. Outten, of Womble, Carlyle, Sandridge & Ride, of Greenville, Sara R. Lincoln, of Womble Carlyle Sandridge & Rice, of Charlotte, NC; and Julius W. McKay, II, of

McKay, Cauthen, Settana & Stubley, P.A., of Columbia, for respondent.

Justice MOORE:

Appellants ("the Coggeshalls"), residents of Richland County, commenced this action for damages resulting from medical care provided by respondent (REACH), a fertility clinic located in Charlotte, North Carolina. The trial judge dismissed the complaint for lack of personal jurisdiction under Rule 12(b)(2), SCRCP. We affirm.

## FACTS

As alleged in their complaint, in November 2000 the Coggeshalls consulted respondent Dr. Crain at REACH regarding in vitro fertilization (IVF). In preparation for IVF, Dr. Crain referred Susan Coggeshall to respondent Dr. Moore in Columbia for pre-implantation testing and monitoring. The Coggeshalls subsequently signed a contract with REACH for IVF services. After embryo implantation, Susan became pregnant. At fourteen weeks gestation, amniocentesis revealed a chromosomal abnormality identified as Down Syndrome. In a subsequent telephone conversation, Dr. Crain advised the Coggeshalls to have pre-implantation genetic testing if they wanted to use IVF in the future. This was the first time the Coggeshall were made aware that such testing was available.

The Coggeshalls' child was born with Down Syndrome. The Coggeshalls then brought this action against REACH, Dr. Crain, and Dr. Moore for failure to inform them of pre-implantation genetic testing. Their complaint alleges they will suffer "substantial financial expenses" in caring for a child with Down Syndrome.

In lieu of answering the complaint, the North Carolina defendants, REACH and Dr. Crain, moved to dismiss for lack of personal jurisdiction; Dr. Moore moved to dismiss for failure to state a claim under South Carolina law. The trial judge granted both motions. The Coggeshalls appeal the dismissal of their complaint against REACH and Dr. Crain.

16

## ISSUES

1. Is there "general jurisdiction" under § 36–2–802?

2. Is there "specific jurisdiction" under § 36–2–803?

## DISCUSSION

### A. Background and procedure

Personal jurisdiction is exercised as "general jurisdiction" or "specific jurisdiction." General jurisdiction is the State's right to exercise personal jurisdiction over a defendant even though the suit does not arise out of or relate to the defendant's contacts with the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 15, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); general jurisdiction is determined under S.C.Code Ann. § 36–2–802 (2003). Specific jurisdiction is the State's right to exercise personal jurisdiction because the cause of action arises specifically from a defendant's contacts with the forum; specific jurisdiction is determined under S.C.Code Ann. § 36–2–803 (2003). *Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 611 S.E.2d 505 (2005). The exercise of personal jurisdiction under either statute must comport with due process requirements and must not offend traditional notions of fair play and substantial justice. *Id.* Due process requires some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

At the pretrial stage, the burden of proving personal jurisdiction over a nonresident is met by a prima facie showing of jurisdiction. *Id.* When a motion to dismiss attacks the allegations of the complaint on the issue of jurisdiction, the court is not confined to the allegations of the complaint but may resort to affidavits or other evidence to determine jurisdiction. *Graham v. Lloyd's of London*, 296 S.C. 249, 251 n. 1, 371 S.E.2d 801, 802 n. 1 (Ct.App.1988). The decision of the trial court will be affirmed unless unsupported by the evidence or influenced by an error of law. *Cockrell, supra.*

## B. General jurisdiction under § 36-2-802

The trial judge ruled that jurisdiction was not proper under S.C.Code Ann. § 36-2-802 (2003) which provides in pertinent part:

### § 36-2-802. Personal jurisdiction based upon enduring relationship

A court may exercise personal jurisdiction over a person . . . doing business . . . [in] this State as to any cause of action.

The Coggeshalls contend REACH's activities in South Carolina constitute "doing business" in the state and therefore jurisdiction is proper. They point to REACH's answers to interrogatories which indicate the following:

— REACH performed services for nearly three thousand South Carolina residents between 2000 and 2004 and sent bills to South Carolina;

— REACH earned over $2 million from South Carolina patients during that period which represents less than 1% of REACH's income;

— REACH received referrals from at least twelve South Carolina healthcare providers;

— REACH is a member of the IntegraMed Network of Infertility which has one member in South Carolina;

— REACH has referred South Carolina patients to two other medical practices in South Carolina, in addition to Dr. Moore, for the patients' convenience;

— Of the 55 vendors with whom REACH does business, five are located in South Carolina.

There is no universal formula for determining what constitutes "doing business" to subject a foreign entity to personal jurisdiction; the question must be resolved on the facts of each case. *Troy H. Cribb & Sons, Inc. v. Cliffstar Corp.*, 273 S.C. 623, 258 S.E.2d 108 (1979). As the title of § 36-2-802 indicates, general jurisdiction is based upon "an enduring relationship" with the State. An enduring relationship is indicated by contacts that are substantial, continuous, and systematic. *Cockrell*, 363 S.C. at 495, 611 S.E.2d at 510 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Internat'l*

*Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

In this instance, REACH and Dr. Crain do not have contacts with South Carolina that are substantial, continuous, and systematic to justify the exercise of personal jurisdiction. Neither Dr. Crain nor any of the REACH physicians is licensed to practice medicine in South Carolina; all of the medical care they rendered was rendered in North Carolina. Medical services differ from other types of commercial activity because of the very personal nature of the service rendered. *Hume v. Durwood Med. Clinic, Inc.,* 282 S.C. 236, 318 S.E.2d 119 (Ct.App.1984), *cert. dismissed,* 285 S.C. 377, 329 S.E.2d 443 (1985), *cert. denied,* 474 U.S. 848, 106 S.Ct. 141, 88 L.Ed.2d 117 (1985); *accord Wolf v. Richmond County Hosp. Auth.,* 745 F.2d 904 (4th Cir.1984). As several courts have noted:

> When one seeks out services which are personal in nature, such as those rendered by attorneys, physicians, dentists, hospitals or accountants, and travels to the locality where he knows the services will actually be rendered, he must realize that the services are not directed to impact on any particular place, but are directed to the needy person himself. . . .
> [I]t would be fundamentally unfair to permit a suit in whatever distant jurisdiction the patient may carry the consequences of his treatment. . . .

*Gelineau v. New York Univ. Hosp.,* 375 F.Supp. 661, 667 (D.N.J.1974).

Because medical care is of such a personal nature, jurisdiction over an out-of-state physician is generally not exercised absent other circumstances indicating a purposeful availment of the forum state's market. *See Wright v. Yackley,* 459 F.2d 287 (9th Cir.1972); *Soares v. Roberts,* 417 F.Supp. 304 (D.R.I. 1976); *Woodward v. Keenan,* 79 Mich.App. 543, 261 N.W.2d 80 (1977); *S.R. v. City of Fairmont,* 167 W.Va. 880, 280 S.E.2d 712 (1981); *see generally* Annot. 25 A.L.R.4th 706 (1983). Here, we find no such purposeful availment.

Although REACH has served a fair number of South Carolina patients, REACH does not target its advertising to South Carolina residents nor does it systematically search out patients here. REACH maintains a website accessible by

South Carolina residents but it is simply an informational website that allows prospective patients to email for information. This type of "passive" website does not direct business activities to a particular forum. *See Holland America Line, Inc. v. Wartsila North Amer., Inc.*, 485 F.3d 450 (9th Cir. 2007); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546 (7th Cir.2004) (distinguishing between interactive and passive websites for purposes of personal jurisdiction); *see also McBee v. Delica Co.*, 417 F.3d 107 (1st Cir.2005) (noting that given omnipresence of internet websites, allowing personal jurisdiction to be premised on such a contact alone would eviscerate limits on state's jurisdiction).

█ We decline to hold that REACH or Dr. Crain is doing business in South Carolina based on their unsolicited patient contacts or tangential business dealings with vendors here. We therefore conclude the trial judge properly refused to exercise personal jurisdiction under § 36–2–802.[1]

### C. *Specific jurisdiction under § 36–2–803*

The Coggeshalls contend REACH and Dr. Crain are subject to specific personal jurisdiction under S.C.Code Ann. § 36–2–803 (2003) which provides in pertinent part:

**§ 36–2–803. Personal jurisdiction based on conduct.**

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:

(1) transacting any business in this State;

. . .

---

1. The Coggeshalls also contend the trial judge erred in failing to find Dr. Moore, a South Carolina physician practicing in Columbia, acted as the agent of REACH and Dr. Crain, and therefore personal jurisdiction was appropriate. This argument is not preserved for review. The trial judge's order regarding REACH and Dr. Crain makes no finding regarding any alleged agency relationship between Dr. Moore and REACH. Although the Coggeshalls' brief refers to a motion to amend which may have raised this issue, the motion itself is not included in the record and the trial judge's order on the motion to amend is simply a summary denial. There is nothing in the record indicating the issue of agency was ever considered or ruled upon by the trial judge. Accordingly, it is not preserved for review. *Madison ex rel. Bryant v. Babcock Center*, 371 S.C. 123, 638 S.E.2d 650 (2006).

(4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

. . .

(7) entry into a contract to be performed in whole or in part by either party in this State; . . .

(B) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

As noted in subsection (B), jurisdiction under this section is limited to a cause of action arising from a specific activity within this State. Under subsection (A)(1), "transacting any business," the business activities of REACH and Dr. Crain that occurred in South Carolina, which included billing patients and doing business with vendors, did not give rise to the alleged tort in this case. This subsection does not apply.

Regarding subsection (A)(4), "causing tortious injury," the tortious injury did not occur in South Carolina but in North Carolina where the medical treatment was rendered. We concur with the substantial number of cases finding that the tortious injury occurs in the forum where the medical treatment was given and not where the patient resides. *See Wright v. Yackley,* 459 F.2d 287 (9th Cir.1972) (medical treatment is personal service and tort occurred where service rendered for purposes of personal jurisdiction); *Lemke v. St. Margaret Hosp.,* 552 F.Supp. 833 (N.D.Ill.1982); *Glover v. Wagner,* 462 F.Supp. 308 (D.Neb.1978); *Gelineau v. New York Univ. Hosp.,* 375 F.Supp. 661 (D.N.J.1974); *Simmons v. State,* 206 Mont. 264, 670 P.2d 1372 (1983); *Brocail v. Anderson,* 132 S.W.3d 552 (Tex.App.2004).

Finally, regarding subsection (A)(7), "entry into a contract," the Coggeshalls' payment on the contract in South Carolina is the only part of the contract performed here and this alone is not sufficient to justify the exercise of personal jurisdiction over REACH and Dr. Crain. Further, the contract in this case provides that North Carolina law applies to any claim arising from the agreement. Although not control-

ling, a choice of law provision is relevant in deciding whether to exercise personal jurisdiction. *Springmasters, Inc. v. D & M Mfg.*, 303 S.C. 528, 402 S.E.2d 192 (Ct.App.1991) (*citing Burger King Corp., supra*). The choice of North Carolina law in the agreement indicates REACH did not intend to avail itself of the benefits and protections of South Carolina law by entering a contract with a South Carolina resident. *Burger King Corp.*, 471 U.S. at 482, 105 S.Ct. 2174 (purposeful availment is touchstone of due process for personal jurisdiction).

In conclusion, we hold the trial judge did not err in declining to exercise specific personal jurisdiction under § 36–2–803.

**AFFIRMED.**

WALLER, J., and Acting Justice E.C. BURNETT, III, concur. TOAL, C.J., concurring in result in a separate opinion in which BEATTY, J., concurs.

Chief Justice TOAL concurring in the result:

Although I concur in the result reached by the majority, I respectfully disagree with the analysis and conclusion regarding personal jurisdiction.

The determination of whether a court may exercise personal jurisdiction over a non-resident defendant involves a two-step analysis. *White v. Stephens*, 300 S.C. 241, 245, 387 S.E.2d 260, 262 (1990). First, in order for the courts to have statutory authority to exercise jurisdiction, the nonresident defendants conduct must meet the requirements of South Carolinas long-arm statute.[2] *Id.* In relevant part, South Carolina courts may exercise personal jurisdiction over a person who transacts business in this State or who enters into a contract to be performed in whole or in part in this State. S.C.Code Ann. § 36–2–803(1) and (7) (2003). In my view, REACH transacted business in the State by contacting Dr. Moore and arranging for part of the IVF procedure to be performed in Columbia.

---

2. Additionally, a court may exercise personal jurisdiction as to any cause of action over a person based upon an "enduring relationship" with the State pursuant to S.C.Code Ann. § 36–2–802 (2003). Although, in my view, South Carolina may arguably exercise personal jurisdiction under this statute as well, any analysis of this issue is unnecessary given that the long-arm statute is applicable.

Likewise, since Dr. Moore's services were a necessary part of the IVF procedure, I believe REACH consequently entered into a contract with the Coggeshalls which was performed in part in this State. For these reasons, I disagree with the majority's jurisdictional analysis, and I would hold that South Carolina may exercise personal jurisdiction over REACH pursuant to our long-arm statute.

The second step in the analysis is whether the exercise of personal jurisdiction comports with the requirements of due process. *Cockrell v. Hillerich Bradsby Co.*, 363 S.C. 485, 491–92, 611 S.E.2d 505, 508 (2005). In my opinion, exercising personal jurisdiction over REACH in this case would not violate due process. REACH purposefully sought out Dr. Moore in Columbia to perform services that were integral to the IVF procedure. Additionally, REACH admits it has treated thousands of South Carolinians over the past eight years, which is mostly likely a result of its office location in Charlotte, adjacent to the South Carolina/North Carolina border. *See Cockrell*, 363 S.C. at 485, 491–92, 611 S.E.2d at 508 (2005) (noting that due process requires minimum contacts between the defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice and such that the defendant could reasonably anticipate being haled into court there). I disagree with the majority's analysis in distinguishing between defendants that render medical services and all other defendants. By asserting this distinction, the majority suggests that courts should apply profession-specific standards under which to measure due process requirements, thereby effectively making a policy decision. In my view, such policy decisions are better left to the legislature.

Despite finding personal jurisdiction, however, I would affirm the trial courts dismissal. In my opinion, the Coggeshalls do not allege an injury entitling them to relief. Specifically, the Coggeshalls contend they will suffer substantial financial expenses in caring for their child; however, the Coggeshalls do not allege that the failure to administer the pre-implantation testing caused their child's condition. *David v. McLeod Regional Medical Center*, 367 S.C. 242, 248, 626 S.E.2d 1, 4 (2006) (holding that a plaintiff in a medical malpractice case must show that the defendants negligence

was the proximate cause of the alleged injuries and damages). Therefore, despite their argument to the contrary, the Coggeshalls are essentially seeking damages directly resulting from their child being born. I see no actual difference between this claim and a claim for wrongful life, a claim which we have explicitly rejected. *See Willis v. Wu,* 362 S.C. 146, 161, 607 S.E.2d 63, 71 (2004).

For these reasons, I would hold that although a South Carolina court may exercise personal jurisdiction over REACH, the Coggeshalls failed to present an injury to which they are entitled to relief.

BEATTY, J., concurs.